3L 496
6L 152
8L 418
10L 589
10L 675
11L 715

## WILLIAM A. PORTER *v.* THE STATE.

**1.** CRIMINAL LAW. *Change of Venue.* Upon application to change the venue in a criminal case, the Judge may call witnesses to prove that a fair and impartial trial may be had in the county. He is not compelled to take the affidavits presented with the application, nor confine his examination to those witnesses, but may call witnesses from different parts of the county and examine them to satisfy him as to the propriety of the change.

**.2.** SAME. *Continuance. Affidavit.* If a continuance is refused upon an affidavit alleging sufficient grounds for a continuance, but upon the trial it is made to appear that the affidavit was false, this court will not reverse.

---

### FROM MARSHALL.

---

Appeal in error from the Circuit Court of Marshall county. W. S. McLEMORE, J.

Porter *v.* State.

Lewis Bros. for Porter.

Attorney General Lea for the State.

Deaderick, C. J., delivered the opinion of the court.

The plaintiff in error was convicted in the Circuit Court of Marshall county, at its June term, 1879, of an assault with intent to kill, and sentenced to fifteen years in the penitentiary. A new trial was refused, and he has appealed to this court.

His counsel insists that the judgment should be reversed:

1. Because of a refusal by the court to change the venue upon the prisoner's application and affidavits introduced by him.

2. For refusal of the presiding judge to grant a continuance.

3. For error in admitting and rejecting certain testimony.

4. Because the State's material witnesses were discredited by being contradicted by the other witnesses in the cause, and that the verdict is therefore not sustained by the evidence.

The defendant below and four others, citizens of the county, made affidavits that they did not believe that defendant could get a fair and impartial trial in said county, owing to excitement and prejudice against him. His Honor further interrogated affiants in open court, and also other citizens from different parts of said county, and from such examination was satisfied the application should not be granted.

32—vol. 3.

The statute provides that the venue may be changed "when upon the application of a defendant in a felony case, it is made to appear satisfactorily to the court that, from undue excitement against the prisoner in the county in which the offense was committed, or any other cause, a fair trial could not be had." Code, section 5195.

Exception was taken, also, to the examination by the court, upon the application for change of venue, of other citizens of the county than those whose affidavits were presented by the defendant. According to the statute cited, it must be made to appear satisfactorily to court, that good grounds exist for a change of venue. The application is addressed to the sound discretion of the court. He must decide whether such a state of feeling against the defendant exists, as will probably deprive him of the benefit of a fair and impartial trial. Nor is he bound to assume the fact to be so, upon the *ex parte* statements contained in affidavits which may be made, as it appears was done in this case, by the special friends and relatives of the applicant. He may avail himself of other sources of information, and perhaps the practice adopted in this case was as unobjectionable a method, to ascertain the truth, as could have been adopted. And although the method adopted was unusual in our practice, we think there can be no valid objection to it. The court is charged with the ascertainment of a fact, upon which he is required to act, and it cannot be held to be erroneous to resort to means likely to furnish the basis of a correct judgment.

It has been held by this court, that while the refusal of the judge to change the venue upon application of defendant, may be reversed, yet it would require a strong case of error and abuse of his discretion, to warrant this court in reversing his action. 1 Swan, 325; 3 Col., 355; 11 Heis., 223.

We do not think this is a case calling for the intervention of this court upon this point. The judge has not abused his discretion in refusing to change the venue, and there was no error in such refusal. The change of venue having been refused, defendant then filed his affidavit for a continuance.

The indictment was found at February term, 1879. At that term the cause was continued by consent and tried at next June term. The grounds stated for continuance are, first, on account of the excitement against him; second, that he has just learned that one Champ will testify that defendant admitted that he had committed the offense charged, and that "he is informed and believes that he can prove by one Dan Madison and Dr. Cunningham, who were present when the alleged admission was made, that no such admission was in fact made;" third, that Mrs. Helen Stepps, who has been summoned, is sick and unable to attend, and will prove an alibi; fourth, also one Ben Coleman, who was summoned and is not in attendance, will, he expects, "prove such facts as will show that another man very probably did the shooting."

Under the act of 1827, Code, section 5208, a defendant was entitled to a continuance upon the ground of excitement against him. But in 1875, an act was

passed by the Legislature, leaving it to the sound discretion of the court to determine whether a continuance should be granted for this, instead of an imperative requirement, as the act of 1827 had been construed to be.

The second cause for continuance was the absence of Dan Madison and Dr. Cunningham, who were present, as alleged in the affidavit, when the alleged admission of guilt was made by defendant. Witness. Champ did testify, as defendant supposed he would, that he had admitted to witness that he had shot Neal. He was not asked on cross-examination, if any. one was present when the admission was made. But Champ says it was made while he and defendant were riding together to a trial in the neighborhood. Dr.. Cunningham was also examined as a witness in the case, and was not asked any question as to any conversation between witness, Champ and defendant, nor as to his being present at any time with them.. These facts, we are of opinion, show that his affidavit was false in respect to his alleged expectation that he could contradict Champ's statement by Dr. Cunningham and Madison. Mrs. Helen Stepps, who was stated to be sick at home, was present and examined as a witness for defendant.

The last ground for a continuance, is the absence of Ben. Coleman, by whom witness expects to prove *such facts* as will show that another very probably did the shooting. He does not say he can prove another man did the shooting, but still the affidavit does show upon its face sufficient ground for a continuance, and

we think it would have well justified the court in granting it. But we have held, that is cases where sufficient *prima facie* cause for a continuance has been shown on affidavit, which has been refused by the court below, this court will not reverse, if upon the trial of the cause, it satisfactorily appears that the grounds upon which the continuance was asked were false, and fabricated for the purpose of obtaining delay, and such, we think, are the aspects of this case.

As to the contradictions of the material State's witnesses by proof of statements out of court, different from their evidence in court, we attach, under the peculiar circumstances of this case, but little importance to them. In most cases they admit the contradiction, and give as a reason for stating that they did not recognize defendant when he shot, as to part of such statements, that he was at large and they did not wish to publish that he was known, lest he might flee the country or do them personal harm. And in other cases, that the inquiries were made by his friends, and that they did not wish to disclose facts, that they knew, to them.

Upon the trial, three witnesses testify that they saw and recognized defendant as the man who shot Neal. Neal's barn was set on fire, and defendant secreted himself behind a picket fence where there was an opening in the fence some twelve or fifteen inches wide. As Neal rushed from his house toward his barn, about 10½ o'clock at night, followed by McKinney, his wife and a negro woman, he was shot by defendant, who was twenty-one yards off. He fell,

and by the brilliant light from his burning barn, saw defendant with his gun raised as if about to shoot again, and exclaimed "Porter has shot me." Neal's wife did not identify him, but McKinney and the negro girl did, and all three swear he was the man that shot Neal. Defendant was traced through the field into the woods, and there were found the tracks of a running horse with one hind foot bare and the other with a shoe on with a swelled heel, corresponding exactly with the tracks made by defendant's horse. The tracks in the field were not identified by any peculiar mark, but were proved to correspond in size with those of defendant. And along the line of his retreat was found a picture, in a day or two after the shooting, which was identified by a witness as one given to defendant by the witness a day or two before the shooting occurred. He told Champ that he shot Neal but once, but that the second barrel of his gun was accidentally discharged as he was making his escape, and a man in the neighborhood heard two shots. On Friday evening he took his gun from its rack over the door and left it in the stable at Stepps', where he and Champ were staying. A negro boy found it in the stable and was bringing it to the house, and defendant made him take it back to the stable. Defendant had previously made threats against Neal, who had him arrested for horse-stealing, and on Saturday when he was arrested, he had his horse saddled and hitched in a cedar thicket, a quarter of a mile from Stepps' house, where he was.

Against this strong array of direct and circumstantial evidence against defendant, we have not the slightest contradiction, except the contradictory statements of the witnesses for the State hereinbefore commented on, and the testimony of Stepps, his wife and niece, tending to establish an *alibi*. This testimony is in substance, that defendant was at Stepps' house on Friday night, the night on which the shooting was done, and about 8 o'clock at night he went up stairs, leading from the room in which Stepps, his wife and niece slept, to his own bed room, immediately over the family room; that he left his shoes in Stepps' room, and the only egress from defendant's room was through Stepps' room, through a door upon the stairs, which Stepps says he had buttoned on the side in his room; that the family heard defendant several times in his room during the night, and spoke to him and were answered by him. And Stepps states that about half after ten, he went into defendant's room, felt him in bed, spoke to him and he was answered by him. Stepps says there were two small windows in defendant's room, with 4 by 10 panes of glass in each, and they say that these windows were nailed with large nails and could not be moved. Another witness, however, states that a day or two after the arrest of defendant, he saw under one of these windows, prints of mud on the logs of the house leading from the ground to the window, and he climbed up the wall easily and entered through the window into the room, the window not being fastened, as described by the three witnesses for defendant.

It was seven or eight miles from Stepps' house to Neal's, and Stepps swears, and is sustained by his wife and partly by his niece, that defendant was at his house at 10½ o'clock, about the hour at which all the evidence shows Neal was shot. If this be true, it would be physically impossible that defendant did the shooting. The testimony of these three witnesses cannot be reconciled with the other testimony in the cause, and the jury did not believe it, and we are of opinion that they were warranted from the other evidence in the cause in discrediting it.

Upon a careful examination of the whole case, we are satisfied that the verdict of the jury is fully sustained by the evidence.

The charge of the court was full, fair and correct, and there is no such error in the record as makes it our duty to reverse the judgment, and it will be affirmed.